```
               IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF OKLAHOMA
```

TIFFANY LANE,                       )
                                    )
            Plaintiff,              )
                                    )
v.                                  )       Case No. CIV-13-300-RAW-KEW
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Tiffany Lane (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 30, 1977 and was 33 years old at the time of the ALJ's decision. Claimant completed her high school education and some college classes. Claimant has worked in the past as a cashier and nail technician. Claimant alleges an inability to work beginning July 1, 2007 due to limitations resulting from Lyme Disease, chronic pain, anxiety, and

3

neurological disorders.

**Procedural History**

On July 13, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 13, 2010, an administrative hearing was held before Administrative Law Judge ("ALJ") Michael Kirkpatrick. On January 6, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on May 17, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a wide range of sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find her fibromyalgia as a severe impairment; (2) improperly

rejecting the opinions of her treating physicians concerning her fibromyalgia; and (3) failing to find Claimant's eye conditions as impairments which impact upon her ability to work.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of Lyme disease, Hashimoto's disease, gastroesophageal reflux disease (GERD), PTSD, and generalized anxiety disorder. (Tr. 16). The ALJ also found Claimant retained the RFC to perform a wide range of sedentary work. In so doing, the ALJ determined Claimant could occasionally lift/carry 10 pounds and frequently lift/carry up to 10 pounds, stand and/or walk for up to two hours in an 8 hour workday, and sit for at least 6 hours in an 8 hour workday. He found Claimant could perform both simple, routine (unskilled) tasks and detailed (semi-skilled) tasks, but not complex (skilled) tasks. (Tr. 19). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of telephone quotation clerk, addresser, and film touch up inspector which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 29).

Claimant contends the ALJ should have found her fibromyalgia as a severe impairment. The organization of Claimant's briefing is

5

somewhat confusing. The first error asserted is entitled "Lack of Substantial Evidence" yet there is little argument on this point other than a generalized recitation of the standard case authority requiring an ALJ's decision be supported by substantial evidence. Therefore, this Court proceeds to the more substantive "Error 2" concerning the ALJ's consideration of Claimant's fibromyalgia.

Since the ALJ determined Claimant suffered from other severe impairments, the sole question presented by Claimant's arguments is whether the inclusion of Claimant's fibromyalgia problems limited her ability to engage in basic work activities.

The ALJ recognized that Claimant sought treatment for fibromyalgia on February 23, 2010, seeking the services of Dr. Kelly D. Boulden. (Tr. 17). Little analysis of this condition appears in the ALJ's decision thereafter.

Claimant was treated by Dr. Boulden from February 2010 through August 2010. Claimant completed a Chronic Fatigue/Fibromyalgia Information questionnaire. Claimant stated that she suffered from chronic widespread pain for more than three months in all four quadrants of her body. (Tr. 627). She reported hurting all over, especially her hips, spine, neck, and shoulders. She also stated she had an erratic mood and gets angry quicker now. She stated she was easily distracted and had foggy thinking. (Tr. 635).

Upon examination on February 24, 2010, Dr. Boulden found Claimant was positive in 12 out of 18 tender points. (Tr. 609). On March 25, 2010, Dr. Boulden reported Claimant's pain was "a little better." (Tr. 607). Again, on May 5, 2010, Claimant reported that her pain was "slightly better." (Tr. 604). On June 16, 2010, no change was noted by Dr. Boulden in Claimant's pain. (Tr. 598). Claimant's energy level was noted as a 6 out of 10 and her sense of well-being was found to be 7 out of 10. (Tr. 621). On August 3, 2010, Claimant's energy level was 4 out of 10 and her sense of well-being was 7 out of 10. Id.

Additionally, Claimant testified as to the effects of fibromyalgia. She stated that two to three days per week the pain is so severe that she cannot get out of bed. She testified that she follows her doctor's orders and gets rest, takes supplements, and follows a good diet. (Tr. 41).

While the ALJ did not specifically discuss the condition of fibromyalgia, he did give Dr. Boulden's opinion "little weight." The ALJ's basis for doing so was that Dr. Boulden only saw Claimant four times and thereafter only consulted with her on the telephone. The ALJ then recited medical evidence concerning Claimant's range of motion and other objective findings of strength and mobility. (Tr. 23).

On September 28, 2010, Dr. Boulden completed a Physical Residual Functional Capacity Questionnaire on Claimant. Dr. Boulden found Claimant was incapable of tolerating work stress because such stressors will aggravate Claimant's pain and cause her to become bed-bound. He noted Claimant suffered from pain severe enough to interfere with attention and concentration "frequently." Dr. Boulden opined that Claimant could walk less than one block without rest or severe pain. He found Claimant could walk/stand or sit for less than 2 hours in an 8 hour workday. He stated that Claimant was frequently unable to wake for any duration or distance due to severe pain. (Tr. 667). Dr. Boulden also found Claimant would have to take unscheduled breaks every 15-30 minutes and have to rest about 30 minutes every 4 hours. He stated Claimant could frequently lift less than 10 pounds. (Tr. 668). He also indicated Claimant had significant limitations in repetitive reaching, handling, and fingering. She would experience good days and bad days and would be required to be absent from work more than four days per month. (Tr. 669).

The regulations acknowledge fibromyalgia as a legitimate medical condition, noting that its diagnosis can be found through (1) a history of widespread pain; and (2) a finding of at least 11 of 18 tender points on physical examination. Soc. Sec. R. 12-2P.

8

Claimant met the criteria on both fronts.  The ALJ appears to have been attempting to apply the objective standards of other physical conditions and impairments to Claimant's asserted fibromyalgia condition.  This was not proper under the regulations.

Moreover, the ALJ's basis for providing little weight to Dr. Boulden's opinion was largely based upon the inconsistency between his opinion and that of other doctors evaluating Claimant for other physical conditions.  In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. (quotation omitted).  The factors reference in that section are:  (1) the length of the

9

treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). The ALJ's evaluation of Dr. Boulden's opinion concerning Claimant's fibromyalgia was woefully inadequate. On remand, the ALJ shall reconsider his RFC evaluation as well as his assessment of Dr. Boulden's opinion and Claimant's fibromyalgia

as a severe impairment.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 26th day of August, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE